**Sidney L. JAFFE and Ruth M. Jaffe, Plaintiffs,**

v.

**Stephen L. BOYLES, Accredited Surety & Casualty Co., Francis L. Giles, William Hatch, Timm Johnsen, Daniel J. Kear, Joseph C. Miller, Glenn E. Norris, Clyde E. Shoemake, Hank M. Snow, Jr., and Louis R. Stark, Defendants.**

No. CIV–84–379C.

United States District Court, W.D. New York.

Aug. 27, 1985.

Covington & Burling (James C. McKay, of counsel), and Jan Schneider, Washington, D.C., for plaintiffs.

Jim Smith, Atty. Gen. of State of Fla. (Kent A. Zaiser, Asst. Atty. Gen., of counsel), Tallahassee, Fla., for defendants Boyles, Hatch, Norris, Shoemake, and Stark.

Rumberger, Kirk, Caldwell, Cabaniss & Burke (Francis M. McDonald, Jr., of counsel), Orlando, Fla., for defendants Accredited Surety & Cas. Co., Johnsen, Kear, and Snow.

Hurwitz & Fine (Theodore J. Burns, of Counsel), Buffalo, N.Y., for defendant Giles.

CURTIN, Chief Judge.

This is a most unusual case, involving claims of secret meetings, bounty hunting, and kidnapping across international borders.

Plaintiffs are Sidney L. Jaffe and his wife, Ruth M. Jaffe. Defendants are a Florida bonding company, Accredited Surety & Casualty Co.; its president, Hank M. Snow, Jr.; two of its agents, Timm Johnsen and Daniel J. Kear (collectively referred to as the bonding company defendants); its one-time attorney, Joseph C. Miller; an attorney from the Florida Department of Business Regulation, William Hatch; three attorneys from the Florida office of the State Attorney, Seventh Judicial District, Stephen L. Boyles, Clyde E. Shoemake, and Louis R. Stark; one investigator from that office, Glenn E. Norris (collectively referred to as the Florida State defendants); and an inspector with the Niagara County Sheriff's Department in New York, Francis L. Giles.

On or about August 7, 1980, Sidney Jaffe was arrested in Florida on charges of violating the Florida Land Sales Practices Act. Defendant Accredited Surety & Casualty Co. posted bail bonds totaling $137,500 to secure Jaffe's release.

Jaffe's trial was set for May 18, 1981. At that time, Jaffe and his wife were living in Canada. On the scheduled date of trial, Jaffe's attorney appeared and told Judge Robert Perry that Jaffe would not be available due to health reasons. Accredited's bond was forfeited, and Judge Perry issued a warrant for Jaffe's arrest, instructing prosecutor Stark, one of the Florida State defendants, to begin extradition proceedings. Three of the Florida State defendants twice applied to the Office of the Governor of Florida for Jaffe's extradition from Canada. These requests were rejected. Judge Perry entered a final judgment forfeiting the bonds.

At this point, the parties dispute the facts and their implications. According to plaintiffs, three of the Florida State defendants—Shoemake, Stark, and Norris—met with defendant Miller, Accredited's at-

torney, to devise a plan to return Jaffe to Florida in light of the thwarted extradition requests. The Florida State defendants are said to have urged Miller to persuade Accredited to "go get" Jaffe and agreed to seek to vacate the judgment of forfeiture on the bonds to provide economic incentive to the bonding company. Plaintiffs allege that other secret meetings were held during the summer of 1981 and into the autumn.

At one such meeting, plaintiffs believe a kidnapping scheme was solidified. On September 15, 1981, the Florida State Attorney's Office, the Board of County Commissioners of Putnam County, Florida, and Accredited, the bonding company, are said to have entered into a "tri-party agreement." The judgment of forfeiture was to be vacated and placed in escrow until the bonding company returned Jaffe to Florida. According to plaintiffs, all defendants (except Giles) were informed of the nature of the "tri-party agreement."

Defendants Snow and Accredited Co. are then said to have ordered defendants Kear and Johnsen to kidnap Jaffe in Canada and forcibly bring him back to Florida. Plaintiffs say Johnsen was either provided with or somehow obtained certified copies of the bail bonds, a specially drawn Florida bench warrant, and papers indicating that he was acting pursuant to Florida authority. Plaintiffs claim that on September 18, 1981, Florida State defendant Norris telephoned Johnsen in Canada with the final go-ahead to abduct Jaffe.

On September 23, 1981, the alleged kidnapping plot was put into motion. Defendants Johnsen and Kear seized Jaffe at his apartment building in Toronto, Canada, as Jaffe was returning from jogging. Jaffe was taken, against his will, through Ontario. He was then taken across the Canadian-American border across the Rainbow Bridge at Niagara Falls. From there, he was whisked to the Niagara Falls International Airport and forced to board a plane to Orlando, Florida. Plaintiffs claim that during this process, Johnsen and Kear made several misrepresentations to Canadi-

an and American Customs officers and to members of the Niagara County Sheriff's Office at the airport.

Jaffe's son had called the Niagara County Sheriff's Department, and officers were sent to the airport. One of the officers is said to have called defendant Giles, who then is said to have called Niagara County District Attorney Peter Broderick. Broderick reportedly advised defendant Giles that Johnsen and Kear should be permitted to take Jaffe back to Florida. Plaintiffs claim Jaffe told Giles that he was being forcibly abducted from Canada but that Giles permitted Johnsen and Kear to drag Jaffe on board the waiting plane. Jaffe arrived in Orlando, Florida, from where he was taken to the Putnam County Jail in Palatka County, Florida, to await trial. The Canadian government filed several diplomatic protests and eventually filed suit in United States District Court in Florida. *In re Application of Canada*, 83–661–Civ–j–16.

Jaffe was convicted and sentenced to consecutive jail terms totaling 145 years. He was imprisoned until September 2, 1983, when the Florida Fifth District Court of Appeal reversed his conviction (except as to the one count of failure to appear). On July 18, 1983, defendant Boyles filed new charges against Jaffe for violating the Florida organized fraud statute, section 817.036, Florida Statutes. He was released on $150,000 bail on that charge. On March 2, 1984, another charge, this one alleging perjury, was filed against Jaffe by defendant Boyles. Defendants have sought to extradite Jaffe from Canada on these new charges. Jaffe moved to dismiss the organized fraud charges against him on the grounds of double jeopardy and collateral estoppel. This motion was denied by the District Court of Appeal for the State of Florida, Fifth District, on December 27, 1984. Jaffe's motion for a rehearing was denied on February 8, 1985.

In this action, plaintiffs claim that the defendants violated plaintiffs' rights under 42 U.S.C. §§ 1983 and 1985, committed torts cognizable under the Alien Tort Act, 28 U.S.C. § 1350, committed torts in viola-

tion of New York State law, and caused loss of consortium on the part of Mrs. Jaffe. Plaintiffs originally included a count involving malicious prosecution and abuse of process in their complaint (Count IV). In a letter brief to the court submitted after oral argument, plaintiffs agreed that allegations involving malicious prosecution were not ripe and withdrew those allegations (Item 76).

For the reasons below, the court has determined that venue is not proper in this district and transfers this case to the Middle District of Florida. 28 U.S.C. § 1406(a).

*Subject Matter Jurisdiction*

 The bonding company defendants and defendant Miller challenge this court's subject matter jurisdiction under 28 U.S.C. § 1343(a)(3), the jurisdictional base for actions under 42 U.S.C. § 1983.

28 U.S.C. § 1343(a)(3) provides that district courts have original jurisdiction to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Defendants claim that since plaintiffs are not citizens of or in the jurisdiction of the United States, there is no jurisdiction under section 1343(a)(3). Jaffe, however, was within the jurisdiction of this country during part of the alleged deprivation of rights. The provisions of 28 U.S.C. § 1343 and 42 U.S.C. § 1983 are complementary. *Examining Board of Engineers v. Flores de Otero, Puerto Rico*, 426 U.S. 572, 583, 96 S.Ct. 2264, 2272, 49 L.Ed.2d 65 (1976). Aliens may bring suit under 42 U.S.C. § 1983. *Simon v. Lovgren*, 368 F.Supp. 265, 268–69 (D.C.1973).

This court also has jurisdiction pursuant to 28 U.S.C. § 1331 and, presumably, § 1350 (*see* discussion, *infra*). There is also subject matter jurisdiction under 28 U.S.C. § 1332. The action is between "citi-

zens of a State and citizens or subjects of a foreign State."

Mr. Jaffe has stated that he is a citizen of Canada (Item 43). Mrs. Jaffe is described as a Canadian citizen in the complaint, which has not been contested by defendants. Defendants are each citizens of a state of the United States. It is not necessary that all defendants are residents of the same state. *In Re Paris Air Crash of March 3, 1974*, 399 F.Supp. 732, 748–49 (C.D.Cal.1975).

### Personal Jurisdiction

Plaintiffs assert personal jurisdiction over the defendant by virtue of the New York State "long-arm statute," C.P.L.R. § 302. The bonding company defendants and defendant Miller have moved to dismiss on the ground that this court lacks personal jurisdiction over them. The Florida State defendants raised a lack of personal jurisdiction as an affirmative defense in their answer. The Florida State defendants have not moved to dismiss on this basis, nor have they briefed this issue.

In view of the determination that venue is improper in this district, a detailed discussion of personal jurisdiction is not necessary. *LeRoy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979). Although plaintiffs have made a *prima facie* showing of jurisdiction, some discussion might prove useful.

In support of their claim that the court has personal jurisdiction over the defendants, plaintiff rely most heavily on section 302(a)(2), the commission of a tortious act in the State:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act.

The bonding company defendants and defendant Miller claim that no tortious act has been committed, since bondsmen such as Johnsen and Kear have a private common law right to seize and return their principal (*citing Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 371, 21 L.Ed. 287 (1872)). However, as was noted by Judge Murnaghan of the Court of Appeals for the Fourth Circuit, the private right of bondsmen to seize their principal extends only throughout the United States. *Kear v. Hilton*, 699 F.2d 181, 182 (4th Cir.1983). *See also, Reese v. United States*, 76 U.S. (9 Wall.) 13, 21–22, 19 L.Ed. 541 (1869): "[T]he power of arrest can only be exercised within the territory of the United States ...."

The acts alleged by plaintiffs amount to a tortious act. Johnsen and Kear may have had the right to seize Jaffe had they found him in New York and had they not been working in concert with State officials. Under the facts alleged, Jaffe's arrest was illegal. This tort continued in New York. The bonding company defendants and defendant Miller also claim there is no personal jurisdiction over them because only Johnsen and Kear were physically present in New York when the tort was committed. However, they all need not have been present during the commission of the tort. C.P.L.R. § 302(a) covers acts by an individual *or* his agent. Kear is an employee of the bonding company; Johnsen was recruited to seize Jaffe (Item 43, Exh. 2, p. 579).

In any event, formal agency relationship is not necessary to impute the acts of the agent to a defendant when he is being sued by a third party. *Galgay v. Bulletin Company*, 504 F.2d 1062, 1065 (2d Cir.1974). The Court of Appeals for the Second Circuit noted New York's broad construction of the term "agent" under section 302 in *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir.1982), and the court went on to note:

However, before an agency relationship will be held to exist under section 302(a), a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.

*Id.* at 122 (citations omitted).

In *Grove Press,* the circuit court reversed the decision of the court below that personal jurisdiction existed under C.P.L.R. § 302(a)(2) based on the existence of a conspiracy. The Second Circuit found that there was no *prima facie* showing of conspiracy.

■ Allegations of conspiracy must be more than mere conclusory statements to support personal jurisdiction under C.P. L.R. § 302(a)(2). *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87 (2nd Cir., 1975). In that case, the only factual basis for the alleged conspiracy was that a defendant was the brother and business associate of a person who committed a tortious act. *Id.* at 93. In the instant case, plaintiffs made specific allegations of a conspiracy. They have supplied approximate dates and places of meetings. They have also supplied excerpts of testimony from some defendants which could support the existence of a conspiracy.

At this point, plaintiffs have made a *prima facie* showing of conspiracy to support personal jurisdiction under C.P.L.R. § 302. Since the Florida State defendants have not pressed their affirmative defense of lack of personal jurisdiction, the court did not consider it. Further discovery might have been necessary on this issue. But, in view of the transfer of venue, the point is moot.

### Venue

Defendants raise serious objections to venue in this district, seeking dismissal of the case pursuant to 28 U.S.C. § 1391(b) or, alternatively, transfer under 28 U.S.C. § 1404(a).

Only defendant Giles, a resident of this district, does not challenge venue here. In fact, during oral argument, he requested a severance in the event the case is transferred to Florida.

■ Seven of the remaining defendants are in the Middle District of Florida. The other three (Kear, Johnsen, and Hatch), agree to venue in the Middle District of Florida. While a waiver of objection to venue will not make venue proper if it is otherwise improper (*Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960)), it does show that the Middle District of Florida is convenient for most defendants.

Under 28 U.S.C. § 1391(b):

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Since all defendants in this case do not reside in the same district, venue is proper only where "the claim arose." Determining where a claim arises for the purposes of 28 U.S.C. § 1391(b) frequently proves to be a vexing and uncertain process.

Before 1966, 28 U.S.C. § 1391(b) permitted venue based solely on the residence of the defendant or defendants. To seal the "venue gap" which appeared when defendants resided in more than one district, Congress amended the statute in 1966 to provide alternatively for venue in the district "in which the claim arose." The determination of where a claim arises is a federal question to be answered by federal law. *LeRoy v. Great Western United Corp.,* 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979).

It has been suggested that the amendment contemplates every claim arising in only one district. *Canaday v. Koch,* 598 F.Supp. 1139, 1147 (S.D.N.Y.1984); *Cheeseman v. Carey,* 485 F.Supp. 203, 210–11 (S.D.N.Y.1980). *But see,* Discussion in J. Moore Federal Practice ¶ 0.142[5.–2], p. 1431 (1974).

The Supreme Court in *LeRoy* chose not to decide whether the language of 28 U.S.C. § 1391(b) "adopts the occasionally

fictive assumption that a claim may arise in only one district." The Court noted, however, that Congress did not intend to give plaintiffs "unfettered choice" among several districts and set forth factors for determining where venue is proper when it is not clear that the claim arose in only one specific district. *Id.* 443 U.S. at 184–85, 99 S.Ct. at 2717.

> In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 185, 99 S.Ct. at 2717 (citation and footnote omitted).

Defendants assert that the claim arose only in the Middle District of Florida since the alleged plot was formed in Florida, preparations were made there, and Florida was the ultimate destination. They say the fact that Jaffe was returned to Florida through this district was a "mere fortuity."

Plaintiffs maintain that *only* the Western District of New York, the point where Jaffe was forced across the border between Canada and the United States, is the place where the claim arose and the only proper district for venue under 28 U.S.C. § 1391(b). In making this point, plaintiffs portray this action as one turning on Jaffe's forced passage over the border. This, they claim, makes the existence *and* location of the border "central."

The court, however, does not see the *location* of the international border as being crucial in this case, and certainly not as determinative of where the claim arose. The fact that Jaffe was seized in a foreign country abrogated the bondsmen's private right to arrest him. His seizure was therefore illegal whether or not he was returned

to this country. *See Kear v. Hilton,* 699 F.2d at 162.

■ A "claim" is the aggregate of operative facts giving rise to a right enforceable in the courts. 1 Moore's Federal Practice, § 0.142[5.–2] at 1423–35 (1974). In determining where the claim arose, it is necessary to consider the legal theories on which the action is based.

### A. 42 U.S.C. § 1983

Plaintiffs view defendants' failure to extradite Jaffe as the foundation of their section 1983 cause of action. Therefore, they argue that the border is where the claim arose (Item 44, pp. 12–15). Plaintiffs cite cases standing for the proposition that a violation of extradition procedures is actionable under 42 U.S.C. § 1983. *See,* for example, *Crumley v. Snead,* 620 F.2d 481, 483 n. 9 (5th Cir.1980); and *Wirth v. Surles,* 562 F.2d 319, 321–22 (4th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978). These cases involved *interstate* extradition and amounted to violations under Art. IV § 2, cl. 2 of the United States Constitution and of its companion statute, 18 U.S.C. § 3182. Article IV, § 2, cl. 2, however, applies only to *interstate,* not *international,* extradition. *Sami v. United States,* 617 F.2d 755, 774 (D.C.Cir.1979). *See also McElvy v. Civiletti,* 523 F.Supp. 42, 47 (S.D.Fla.1981).

This is not to suggest that plaintiffs do not have a cause of action under section 1983. Indeed, plaintiffs state in their complaint that defendants' actions also violated their right to be free from unlawful arrest and detention. And it may be that defendants' failure to resort to international extradition procedures violated plaintiffs' right to due process under the fourteenth amendment.

As plaintiffs point out, their civil rights cause of action did not become cognizable until there was a deprivation of rights. A conspiracy is actionable under 42 U.S.C. § 1983 when there is an actual deprivation of a right. *Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980). The place

where Jaffe's "injury" occurred was Toronto. where plaintiff was allegedly illegally seized.

■ However, because a section 1983 violation must be suffered by a citizen or occur within the jurisdiction of this country, plaintiff's civil rights counts were not cognizable until defendants crossed the border with Jaffe. In light of this, plaintiffs urge that their cause of action under section 1983 "arose" in this district only.

Plaintiffs' claim first became cognizable under 42 U.S.C. § 1983 when Jaffe was forced into this country's jurisdiction. At that point, however, the court became cognizable of *all* the events comprising the claim in this case: the Florida conspiracy, the overt acts committed in furtherance of that conspiracy (*i.e.,* the forfeiture of the bail bond), the Toronto kidnapping, the dragging of Jaffe across the border and into a Florida-bound plane. Without the alleged conspiracy involving Florida State officials, plaintiffs would not have a cause of action under section 1983. All these operative facts form the claim giving rise to plaintiffs' civil rights causes of action.

### B. Alien Tort/28 U.S.C. § 1350

Plaintiffs allege in Counts II and VI that defendants' actions constituted one or more alien torts cognizable by this court under 28 U.S.C. § 1350. Section 1350 provides:

The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.

Plaintiffs maintain that defendants violated the law of nations, the United Nations Charter, and, specifically, the Treaty of Extradition between the United States of America and Canada, 27 UST 983, T.I. A.S. No. 8237. They urge that, although Jaffe's initial seizure in Toronto violated Canadian law and the law of nations, the treaty violation did not occur until Jaffe was forced across the United States border, the point at which the claim "arose."

■ The provisions of 28 U.S.C. § 1350 are jurisdictional; they do not create a cause of action for a plaintiff seeking recovery under a treaty, *Dreyfus v. Von Finck,* 534 F.2d 24, 28 (2d Cir.1976), *cert. denied,* 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976).

Not every treaty violation gives rise to a cause of action for private parties:

It is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights.

*Id.* at 30 (citations omitted). *See generally County of Monroe v. State of Florida,* 678 F.2d 1124, 1139 (2d Cir.1982) (Judge Newman in dissent):

Treaty obligations are generally construed to run only between the contracting parties, and rights of enforcement by individuals are not recognized unless the treaty clearly indicates that method of enforcement.

(Citations omitted.)

■ Plaintiffs suggest that Article 8 of the Extradition Treaty between the United States and Canada provides for a private right of action in this case (Item 76). Article 8 reads:

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourse provided by such law.

Article 8 is the only place in the treaty wherein any private rights are mentioned. It focuses on the determination as to whether extradition is granted. This Article refers the person whose extradition is sought to the law of the country from which he is sought. He has the right to use "all remedies and resources provided by such law" to attempt to thwart his extradition. The power to enforce the treaty as a whole remains with the signers, Canada and the United States. (*But see Taylor v. Jackson,* 470 F.Supp. 1290 (S.D. N.Y.1979).)

In this case, Jaffe is not seeking to prevent his extradition from Canada to Florida. There is no determination as to the propriety of extradition to be made. If there were, Jaffe would be referred to Canadian law. On the facts of this case, as presented in the complaint, Article 8 does not supply Jaffe with a private right of action under the treaty.

This, however, does not mean that Jaffe has failed to advance a cause of action in alien tort under 28 U.S.C. § 1350. Defendants' conduct may well amount to a tort in violation of the law of nations.

> The illegal seizure, removal and detention of an alien against his will in a foreign country would appear to be a tort, ... and it may well be a tort in violation of the "law of nations."

*Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1201 n. 13 (9th Cir.1975) (citation omitted). *See also Filartiga v. Pena-Irala,* 630 F.2d 876, 888 (2d Cir.1980), where jurisdiction was found under 28 U.S.C. § 1350 in a case involving death by torture of plaintiff's brother in Paraguay by Paraguay policeman; *and, generally, United States v. Toscanino,* 500 F.2d 267, 277 (2d Cir.1980), where international kidnapping was said to violate the United Nations Charter. There, the district court was ordered to hold a hearing to determine whether allegations of government misconduct were true. If so, the court would be required to divest itself of jurisdiction. In that criminal case, defendant was kidnapped from another nation by United States agents. *But see United States v. Darby,* 744 F.2d 1508, 1531 (11th Cir.1984).

Any alien torts committed against Jaffe in violation of the law of nations occurred in Toronto with his seizure and continued with the crossing of the border here. The extradition treaty may well have been violated at the moment the border was crossed, but as already discussed, plaintiffs have no private right of action under that treaty.

In short, while plaintiffs' claim has substantial contacts with the Western District of New York, it cannot be said with any certainty to have arisen only in this district.

■ Nor does the court agree with defendants' contention that, because the majority of the acts described in the complaint occurred in Florida, the claim necessarily arose there (Item 60). In weighing the contacts with each jurisdiction (the test for determining where the claim arises used by many courts and impliedly approved by the Supreme Court in *LeRoy*), the place of injury (Toronto and/or the Western District of New York) is important, but not determinative. The location of the conspiratorial meetings and overt acts must also be considered. *Saper v. Simmons Intern Ltd.,* 582 F.Supp. 987, 991–92 (N.D.N.Y.1983). Despite defendants' occasional attempts to focus on Jaffe's earlier activities in Florida, which ultimately led to his arrest, these activities have no bearing on the propriety of the venue.

■ Based on all of the above, I find that this claim has very substantial contacts with, or a close relationship to, more than one district. *Cheeseman v. Carey,* 485 F.Supp. at 212. Potential locations for where the claim arose are the Western District of New York and the Middle District of Florida (or even Toronto). Since it is not clear that the claim arose in only one district, the court must look to the Supreme Court test set forth in *LeRoy* to determine the propriety of venue: the availability of witnesses, the accessibility of evidence, and the convenience of the defendant. *Id.* 443 U.S. at 185, 99 S.Ct. at 2717.

One of the more significant issues in this case is the availability of non-party witnesses. The Florida State defendants have each provided an affidavit listing the witnesses (virtually all from Florida) they propose calling and a brief statement of the anticipated testimony of each (Item 77). Unfortunately, these affidavits are of limited aid to the court. The majority of these witnesses are unnecessary and their proposed testimony irrelevant to the claim in this action. For the purposes of *plaintiffs' action against defendants,* whether Mr. Jaffe was innocent of any wrongdoing or

whether he single-handedly cheated every would-be property owner in Florida is irrelevant. Since defendants have withdrawn their allegation of malicious prosecution and abuse of process (Count IV of the complaint), testimony about the new charges for organized fraud and perjury are equally irrelevant.

Plaintiffs urge that a maximum of only six of the Florida defendants' non-party witnesses (Holmes, Clark, Burroughs, McKenzie, Hill, and Perry) could offer relevant testimony (see Item 84). However, the court believes that in addition, a witness from the Florida Department of Business Regulation would offer relevant testimony. The testimony of Bondsman Bill Arflin would be helpful. The testimony of some of the Palatka County Commissioners may also be necessary.

The bonding company defendants list seven (and perhaps more) non-party Florida witnesses, all of whom would give what appears to be relevant testimony. Two are also on Boyles' list. One is the treasurer of the defendant company, and compulsory process would not be needed to secure him.

In all, defendants would need approximately 15 non-party witnesses.

Plaintiffs' counsel offered an affidavit describing their proposed witnesses and summarizing their testimony (Item 63). Plaintiffs expect to call five non-party witnesses from Toronto, and at least four from other parts of Canada. The testimony of Canadian federal officials to authenticate diplomatic protests made after Jaffe's return to Florida is unnecessary in this case.

The court notes that none of the Canadian witnesses will be subject to compulsory process either in this district or in Florida. If they were willing to testify, the expense to plaintiffs in securing their attendance in Florida would be greater than providing for them to travel to this district.

From this district, certainly the testimony of William Dietzel, United States Custom Officer, will be important and relevant. Plaintiffs also propose to offer testimony of an employee of the airport, one or more employees of the car rental agencies, and one or more members of the Niagara County Sheriff's Department, all to testify as to what occurred at the airport. Much of this testimony would appear to be cumulative.

After carefully reviewing the papers, it is clear that a majority of the reasonably necessary non-party witnesses are in Florida or Canada. Only a handful are from this district. Even assuming that the Canadian witnesses would all be willing to testify in Buffalo but not Florida (which the court finds unlikely), the Middle District of Florida and this district are roughly equal in terms of the availability of witnesses.

The second factor discussed by the Supreme Court in LeRoy, the accessibility of other relevant evidence, is not determinative in this case. Most of the documentary evidence (i.e., records of the bail bond forfeiture proceedings) is in Florida. Plaintiffs do not dispute this, but point out that they have sought discovery of much of this evidence and that documents could easily by transported to this district (Item 65, pp. 16–17). Plaintiffs say they intend to seek records of the events at the Niagara Falls International Airport. Records of Canadian criminal proceedings against Jaffe and Kear are in Toronto. There is no physical evidence. The court finds that the documentary evidence is equally accessible in either this district or in Florida.

The final factor discussed in LeRoy for determining the locus of the claim is "the convenience of the defendant, but not of the plaintiff." Id. at 185, 99 S.Ct. at 2717. That consideration is decisive here. All defendants, with the exception of defendant Giles (see infra) would find the Middle District of Florida to be the most convenient forum. Seven of those defendants live in that district.

On the contrary, plaintiffs do not live in this district. They reside in Toronto which, as has been discussed, itself has a substantial connection with the claim in this case. Clearly, as between the two American forums, the Western District of New York is

most convenient for plaintiffs (the courthouse is approximately 90 miles from Toronto by car).

However, the Supreme Court emphasized that the convenience of the plaintiffs is not to be considered when determining the propriety of venue under 28 U.S.C. § 1391(b). Since the other factors noted by the Court are roughly equal, the convenience of defendants is dispositive. The locus of the claim is the Middle District of Florida.

In passing, the court notes that there is an additional factor in this case which was not relevant in *LeRoy*. In fact, it is more properly considered in the context of a motion to transfer venue under 28 U.S.C. § 1404. However, plaintiffs strongly urge that adverse publicity against Jaffe in Florida would make a fair trial there unlikely, if not impossible. In response, the Florida defendants have submitted copies of several newspaper articles showing a favorable slant towards Jaffe or against state officials (Item 78). It is undoubtedly true that Jaffe has been the object of intense publicity, both favorable and unfavorable, in Florida and elsewhere. Yet, the court is not convinced that a jury could not be obtained in the Middle District of Florida. That district is a large one, composed of five divisions. All past trials and proceedings involving Jaffe occurred at the state court level, not in the federal courts.

Pursuant to 28 U.S.C. § 1406(a), the case may be dismissed, or in the interests of justice, transferred to the district in which venue is proper. In the interests of justice, the action should be transferred to the Middle District of Florida.

Before transferring the case, however, the position of defendant Giles, who resides in this district, must be considered. The Second Circuit has stated that severance may be permitted, even without improper joinder, under Rule 21 of the Federal Rules of Civil Procedure. *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). The court analyzed a transfer pursuant to 28 U.S.C. § 1404(a). There, in order for the transfer

to occur, the action had to be severed as to certain defendants. *See also Anrig v. Ringsley*, 603 F.2d 1319 (9th Cir.1979), where severance under Fed.R.Civ.P. 21 and transfer under 28 U.S.C. § 1406(a) should have been considered by the district court.

Defendant Giles' role in the allegations in this action is peripheral at best. *Wyndham* at 618. At the Niagara Falls Airport, Jaffe told Giles, an inspector with the Niagara County Sheriff's Office, that he was being kidnapped. Giles called Niagara County Assistant District Attorney Peter Broderick, who instructed Giles to let Johnsen and Kear proceed. Giles did so. He was not a part of the alleged conspiracy. Any witnesses to the airport scene would most likely be from this district.

No party will be prejudiced by this severance. Since Giles' role was so limited, severance of the claim against him pursuant to Fed.R.Civ.P. 21 advances the administration of justice and is fair to all concerned.

The case is severed as to defendant Giles, and the action against Giles shall remain in this district, where venue is proper. As to the action against the remaining defendants, the case is transferred to the Middle District of Florida.

So ordered.