**Mara HENDERSON, Consepsion Harryman, Toni Hipp, Karen Talbert, and Earlene Bryan**

v.

**AT & T CORPORATION and AT & T Communications, Inc.**

**Civil Action No. G–95–248.**

United States District Court, S.D. Texas, Galveston Division.

March 19, 1996.

James Duane Bashline, McLeod Alexander Powel & Apffel, P.C., Galveston, TX, for plaintiffs.

Kathleen M. LaValle, Cohan Simpson Cowlishaw & Wulff, Dallas, TX, for defendants.

### ORDER

KENT, District Judge.

Presently before the Court are the Motion to Sever or for Separate Trials and the Motion to Transfer of Defendants AT & T Corporation and AT & T Communications, Inc. (together AT & T). For the reasons set forth below, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

### I. Background

The Plaintiffs in this case, all female, are employed by or were formerly employed by AT & T as sales persons in a small, distinct business organization within AT & T known as the Profile Initiative Program (PIP). The Plaintiffs are residents of five different cities and four different states who worked in four separate AT & T offices located in three states. While the Plaintiffs were directly supervised by different managers in each office, it appears they were indirectly supervised by the same centralized PIP upper management group. The Plaintiffs contend the PIP management systematically discriminated against them because of their sex and allege discriminatory actions by some of the same individuals in PIP management. However, the Plaintiffs identify no specific discriminatory policy or practice to which they were all subjected. In addition to the claims of sex discrimination, Plaintiff Harryman asserts claims of race, age, and national origin discrimination, while Plaintiff Bryan asserts a claim of age discrimination. All the Plaintiffs also assert various state law claims against the Defendants. Thus, AT & T is faced with five individual Plaintiffs asserting a total of more than twenty claims against it.

### II. Motion to Sever or for Separate Trials

■ AT & T contends the Plaintiffs are misjoined and request that this Court sever the claims of each Plaintiff and proceed with five separate trials. Alternatively, AT & T contends that even if the Plaintiffs are properly joined, severance is necessary to avoid confusion of the jury and to prevent prejudice to AT & T. AT & T argues the jury may improperly conclude that it is guilty of wrongdoing simply because so many Plaintiffs will complain of discrimination and so many different witnesses will testify in support of the Plaintiffs' claims. AT & T further contends that in a single trial, the jury will hear evidence that may be relevant to the claims of one Plaintiff, but that is completely irrelevant and prejudicial to the claims of the remaining Plaintiffs. According to AT & T, a single trial will unnecessarily complicate evidentiary rulings and will deprive this Court of its discretion to rule on the admissibility of marginally relevant but highly prejudicial evidence. In addition, because the Plaintiffs are residents of different states, the state law claims will be governed by the laws of different states; thus, AT & T argues the jury "will be faced with the befuddling situation of inconsistent definitions and instructions on the same type of claim for different Plaintiffs." Motion to Sever at 6.[1]

Under Rule 20, plaintiffs with separate claims may join in a single action "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all persons will arise in the action." Fed.R.Civ.Pro. 20(a). If parties are improperly joined, "[a]ny claim against a party may be severed and proceeded with separately." Fed.R.Civ. Pro. 21. The Plaintiffs contend they are properly joined in this action because they allege the existence of pattern or practice of discrimination in the PIP unit. Thus, the Plaintiffs argue that their claims arise out of the same series of transactions or occurrences and that there are questions of law and fact common to each of their claims.

For the purposes of the Motions now under consideration, the Court will assume the Plaintiffs satisfy the joinder requirements of Rule 20. However, the fact that the Plaintiffs are properly joined does not end the severance inquiry. While Rule 21 is titled "Misjoinder and Non-Joinder of Parties," the Fifth Circuit has held that the ability to sever claims under Rule 21 is not limited curing misjoinder of parties, because "Rule 21 explicitly provides that '[a]ny claim

1. The Court notes, however, that the Plaintiffs whose state law claims would be governed by the laws of states other than Texas have stipulated that they will not pursue their state law claims.

against a party may be severed and proceeded with separately.'" *United States v. O'Neil,* 709 F.2d 361, 369 (5th Cir.1983) (emphasis original).

■ In *O'Neil,* the district court had severed the counterclaims raised by the defendant from the original claims asserted by the plaintiff. Thus, the Plaintiffs here argue *O'Neil* stands only for the proposition that *claims* may be severed from an action, not that properly joined *parties* may be severed. The Court disagrees.

First, neither the language of Rule 21 nor the case law interpreting the Rule supports a distinction between the severing of claims and the severing of parties. Rule 21 allows for the severing of any claim against a party. Because claims are asserted by parties, there will be instances where severing a claim also severs a party from the original litigation. For example, if the claim to be severed happens to be the only claim asserted by one of multiple plaintiffs, then severing the claim will have the effect of severing that plaintiff from the action. Likewise, if the severed claim is the only claim asserted against one of multiple defendants, severing the claim will have the effect of severing that defendant from the action. However, if the severed claim is one of multiple claims asserted by a single plaintiff against a single defendant (or *vice versa* ), neither party is severed from the original action. Instead, the parties are involved in two separate actions rather than the single original action. Given that a separate trial will be required whether or not the severance of a claim also works to sever a party from the original litigation, there is no reason to treat the situations differently.

Moreover, in support of its statement that Rule 21 is not limited to curing misjoinder of parties, the *O'Neil* court referred to *Wyndham Assocs. v. Bintliff,* 398 F.2d 614 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968), and *Sporia v. Pennsylvania Greyhound Lines,* 143 F.2d 105 (3d Cir.1944). In *Wyndham,* the trial court severed the claims against six of the eight defendants, and transferred the claims against those six defendants to another district court. The Second Circuit found the severance and transfer proper, stating that "[Rule 21] authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance." *Id.* at 618.

In *Sporia,* the driver and passenger of a car involved in an accident with a bus joined their claims against the bus company in a single action. The trial court refused to sever the actions to allow the defendant to bring the driver in as a defendant in the passenger's action. 143 F.2d at 105. Recognizing that the joinder of the driver and passenger as plaintiffs was proper, the Third Circuit nevertheless reversed the decision of the trial court, holding that the Rule 21 gives a court the power to sever the claims of properly joined plaintiffs. *Id.* at 107–08.

Therefore, while the severance at issue in *O'Neil* did not have the effect of completely severing a party from the original action, the Fifth Circuit's reliance on *Wyndham* and *Sporia* makes clear that Rule 21 may be used to sever the claims of a properly joined plaintiff. *See also Spencer, White & Prentis, Inc. v. Pfizer Inc.,* 498 F.2d 358, 361 (3d Cir.1974) ("justification for severance is not confined to misjoinder of parties"). In this case, the Court believes that a joint trial of all the Plaintiffs' claims presents a substantial risk of prejudice to AT & T. Therefore, although the Plaintiffs may be properly joined, the Court concludes that severance of at least some of the claims is necessary to ensure that AT & T receives a fair trial.[2]

---

**2.** In opposing AT & T's Motion to Sever, the Plaintiffs rely primarily on *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir.1974), which the Plaintiffs characterize as the seminal case on the propriety of joinder in employment discrimination cases. *Mosley* involved the discrimination claims of multiple plaintiffs working in two General Motors divisions. The trial court severed the plaintiffs' claims, finding that the claims did not satisfy the joinder requirements of Rule 20. *Id.* at 1332. The Eighth Circuit re-

versed, concluding that because the plaintiffs alleged they were affected by a pattern and practice of discrimination, the joinder requirements of Rule 20 were satisfied. *Id.* at 1333–34. Under the analysis of the *Mosley* court, it is quite likely that the claims of the Plaintiffs here also satisfy the Rule 20 joinder requirements. However, as discussed above, the fact that the Plaintiffs are properly joined does not end the inquiry. Because *Mosley* did not consider whether sever-

While the Plaintiffs contend a pattern of discrimination existed in the PIP business unit, the Plaintiffs were affected by this discriminatory practice in different ways, and each raises different claims against AT & T. As AT & T correctly points out, at least one but not all of the Plaintiffs allege they were subjected to a hostile work environment, retaliated against for complaining about discrimination, passed over for promotions, or received unequal pay. *See* Second Amended Complaint at 5–12. Moreover, the Plaintiffs worked on separate teams in separate offices calling on different customers. In their initial Rule 26 disclosures, the Plaintiffs have identified well over 200 persons with knowledge of their claims. Other than the Plaintiffs themselves, very few of these potential witnesses appear on all the disclosure lists.

Thus, even assuming there is a pattern or practice of discrimination within the PIP group, it is clear that the Plaintiffs' claims in fact are highly individualized, involving particularized questions about each Plaintiff's work history and job performance. Clearly, trying the claims in one action would be extraordinarily confusing for the jury, requiring the jury to keep separate more than twenty claims of five Plaintiffs. A single trial would present the jury with the "hopeless task of trying to discern who did and said what to whom and for what reason." *Moorhouse v. Boeing Co.*, 501 F.Supp. 390, 392 (E.D.Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980); *cf. Hanley v. First Investors Corp.*, 151 F.R.D. 76 (E.D.Tex.1993) (refusing to sever the claims of properly joined plaintiffs where each of the plaintiffs asserted the same claims against the defendants and alleged that the defendants committed the same types of culpable conduct).

If these procedural problems were the Court's only concern, the Court likely would not sever the action. However, of much greater concern to the Court is the prejudice AT & T is likely to suffer if the Plaintiffs' claims are tried in a single action. Considering the number of the potential witnesses revealed in the Plaintiffs' Rule 26 disclosure,

it is apparent that a single trial of the Plaintiffs' claims would involve a huge number of witnesses testifying about AT & T's conduct. Under these circumstances, there is a great danger that the jury will find AT & T liable based on the sheer number of witnesses testifying about its purported wrongdoing. *Cf. Grayson v. K–Mart Corp.*, 849 F.Supp. 785, 790 (N.D.Ga.1994) (severing claims of eleven age discrimination plaintiffs in part because of the "tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims.")

Moreover, it is likely that some of the evidence relevant to and admissible in one Plaintiff's case against AT & T will not be relevant to or admissible in another Plaintiff's case. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1221 (5th Cir.1995) (because anecdotal testimony of discrimination from witnesses with different supervisors in different parts of the company too attenuated and dissimilar to the claims of the plaintiffs, the trial court properly excluded the testimony); *Moorhouse*, 501 F.Supp. at 393–94 (in age discrimination case, while evidence of layoffs of other plaintiffs proceeding in separate trials may be relevant to the plaintiff's claim of a pattern or practice of discrimination, "the prejudice resulting from permitting each witness, who is the plaintiff in his own lawsuit, to testify about the circumstances of his departure [from the plaintiff's employer] substantially outweighed the probative value of the testimony"); *cf. Grayson*, 849 F.Supp. at 790 (Age Discrimination in Employment Act "does not provide a right for one plaintiff to recover because a defendant may have discriminated against another plaintiff of like age."). A joint trial would limit the Court's ability to exclude such evidence. In all likelihood, the Court would be forced to admit evidence it would otherwise exclude and instruct the jury that the evidence can be considered only in support of the particular Plaintiff's claim, and cannot be considered in the claims of the other Plaintiffs. Because a joint trial would make it extremely difficult

ance was appropriate even if the plaintiffs were properly joined, this Court's ruling is in no way

inconsistent with *Mosley*.

for the jury to keep each Plaintiff's claim separate and require each Plaintiff to independently prove her case, the jury may simply resolve the confusion by considering all the testimony to pertain to all the claims, despite any limiting instructions. *Cf. Moorhouse*, 501 F.Supp. at 393 n. 4 ("even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that the defendant laid him off because of his age.").

■ Accordingly, the Court concludes that AT & T will be substantially prejudiced by a single trial of the Plaintiffs' claims. The confusion that would be engendered by a single trial is simply too great, and would substantially threaten AT & T's right to a fair trial. Moreover, as will be discussed below, the claims of several Plaintiffs are more appropriately tried in other forums, thus supporting a severance of these claims. The power to sever properly joined claims to facilitate transfer is well-recognized. *See Toro Co. v. Alsop*, 565 F.2d 998 (8th Cir. 1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802 (1978); *Wyndham Assocs. v. Bintliff*, 398 F.2d 614 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Apache Prods. Co. v. Employers Ins. of Wausau*, 154 F.R.D. 650, 660 (S.D.Miss.1994); *In re Eastern District Repetitive Stress Injury Litigation*, 850 F.Supp. 188, 196 (E.D.N.Y.1994); *Jaffe v. Boyles*, 616 F.Supp. 1371, 1381 (W.D.N.Y. 1985); *Hess v. Gray*, 85 F.R.D. 15 (D.Ill. 1979); *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117, 121 (S.D.Tex.1971); *see also* 7 Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure* § 1689 (1986) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum or sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties."). Thus, the Court concludes that a severance of at least some of the Plaintiffs' claims is required in the interests of justice. However, after carefully balancing AT & T's right to a fair trial and the harm that severing the claims will cause the Plaintiffs, the Court determines that a complete severance of each of the Plaintiffs' claims is not required.

Plaintiffs Henderson and Bryan both worked in AT & T's Houston office, and both held the position of "National Account Manager." In addition, many of the potential witnesses listed by these Plaintiffs in their initial disclosures are the same. While Henderson and Bryan assert different claims in addition to their claims of sex discrimination,[3] the factual overlapping of their claims and the similarity of their likely witness lists militate against the severing of these claims. A trial involving the claims of these two somewhat similarly situated Plaintiffs will not present the same procedural difficulties as would a trial involving all five Plaintiffs. The jury should easily be able to keep the claims of the Plaintiffs separate, particularly with the guidance of carefully drafted jury instructions. Moreover, by limiting the trial to two Plaintiffs, the Court will have a much greater ability to control the admission of evidence, and the need for limiting instructions will be greatly reduced.

Accordingly, the Court concludes that, pursuant to Rule 21 of the Federal Rules of Civil Procedure, the claims of Plaintiffs Harryman, Hipp, and Talbert should be severed from this action and each should be proceeded with separately. The Clerk of Court shall establish separate docket numbers for each of the cases of Plaintiffs Harryman, Hipp, and Talbert, and shall include all of the docket entries in Case No. 95–248 in each of the newly-created individual cases. The remaining claims of Plaintiffs Henderson and Bryan shall proceed as Case No. 95–248 in accordance with the deadlines previously set in this case.[4]

---

3. Plaintiff Bryan also asserts a claim of age discrimination, and Plaintiff Henderson claims she was retaliated against after complaining of sex discrimination. *See* Second Amended Complaint at 6.

4. Because the Court is severing a portion of the Plaintiffs' claims, the Court need not consider AT & T's alternative motion for separate trials pursuant to Fed.R.Civ.Pro. 42(b).

## III. Motion to Transfer

AT & T also seeks a transfer of each Plaintiff's case to the District encompassing the office in which each Plaintiff worked. Thus, AT & T seeks to transfer Plaintiff Bryan's case to the Houston Division of the Southern District of Texas, Plaintiff Harryman's case to the Atlanta Division of the Northern District of Georgia, Plaintiff Henderson's case to the Houston Division of the Southern District of Texas, Plaintiff Hipp's case to the Western Division of the Western District of Missouri, and Plaintiff Talbert's case to the Dallas Division of the Northern District of Texas.

■■■■ Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," a case may be transferred to any other District Court or Division where it might have been brought.[5] When considering whether a transfer is warranted, the Court must consider the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the Plaintiff's choice of forum. *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993); *see, e.g., Hogan v. Malone Lumber, Inc.*, 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 682–83 (W.D.Tex.1986).

■■■■ The party seeking a change of venue bears the burden of demonstrating that the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966); *Sanders v. State St. Bank & Trust Co.*, 813 F.Supp. 529, 534 (S.D.Tex.1993). Unless the balance of factors strongly favors the moving party, the Plaintiff's choice of forum generally should not be disturbed. *Peteet v. Dow*

*Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied,* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Enserch Int'l Exploration, Inc. v. Attock Oil Co., Ltd.*, 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987). Whether a case should be transferred is a decision left to the sound discretion of the trial court. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988); *Dupre,* 810 F.Supp. at 825.

■■ As to Plaintiffs Henderson and Bryan, AT & T has failed to convince the Court that a transfer is warranted. In essence, AT & T contends that the convenience of the parties, witnesses, and attorneys requires a transfer to the Houston Division. Given the close proximity of the Houston Division courthouse to the Galveston Division courthouse, the Court finds that any added convenience resulting from the requested transfer would be minimal at best. *See Continental Airlines,* 805 F.Supp. at 1400. Moreover, Plaintiff Henderson resides in Galveston County. This Court is sincerely interested in resolving cases involving citizens of this Division, and only rarely transfers cases brought by or against its own citizens. Thus, the Court declines to disturb the forum chosen by Plaintiffs Henderson and Bryan and introduce the likelihood of delay inherent with any transfer simply to avoid the insignificant inconvenience that AT & T may suffer by litigating this matter in Galveston rather than Houston. Accordingly, as to Plaintiffs Henderson and Bryan, the Motion to Transfer is hereby DENIED.

■■■ As to the remaining claims, however, the Court concludes the Motion to Transfer should be granted. The claims of the remaining Plaintiffs have absolutely no connection to this District. Applying the facts of each case to the factors listed above, it becomes apparent that a transfer of these cases is appropriate.[6]

---

**5.** Individual actions against AT & T could have been brought by Plaintiffs Harryman, Hipp, and Talbert in the Districts to which AT & T seeks transfer because a substantial part of the actions giving rise to the Plaintiffs' claims occurred in those Districts. *See* 28 U.S.C. § 1391(b)(2).

**6.** The Plaintiffs contend AT & T's Motion to Transfer should be denied because it was not

timely made. The Court disagrees. While the Motion was not filed until November 1995, the Plaintiffs were put on notice of AT & T's intention to file a transfer motion through AT & T's Motion to Sever filed in September 1995. A motion to transfer should be made with "reasonable promptness." *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.), *cert. denied,* 493

## A. Availability and Convenience of Witnesses and Parties

■ This factor, which the Court generally considers to be the most important of those listed, see Dupre, 810 F.Supp. at 825, weighs heavily in favor of a transfer of the remaining claims. Plaintiff Harryman is a resident of Greenville County, South Carolina, and was a PIP National Account Manager in the Atlanta, Georgia office. Her primary account responsibility was Georgia–Pacific, which is located in Atlanta. Of the one hundred and twenty potential witnesses identified in her initial disclosure, more than seventy are located in the Atlanta area, including many who are not employed by AT & T. It is anticipated that several Georgia–Pacific employees with knowledge of Harryman's handling of that account will be critical witnesses at trial. These witnesses are located in Atlanta. The remaining witnesses identified in Harryman's disclosures are located in various states.

Plaintiff Hipp is a resident of Jackson County, Missouri, and was a PIP Account Executive in the Kansas City, Missouri office. Of the twenty-seven potential witnesses identified in her initial disclosure, eight are located in Kansas. Most of the anticipated key witnesses are located in Kansas, including employees of Olsten–Kimberly Quality Care, who are familiar with Hipp's work. The remaining witnesses identified in Hipp's disclosures, including the other Plaintiffs, are located in various states.

Plaintiff Talbert, a resident of Dallas County, was a PIP National Account Manager in the Dallas, Texas office. Her primary account responsibility was Texas Instruments, which is also located in Dallas. Of the twenty-eight potential witnesses identified by Talbert in her initial disclosure, sixteen are located in the Dallas area, including six who are familiar with Talbert's work but are not employed by AT & T. The remaining witnesses identified in Talbert's disclo-

sures, including the other Plaintiffs, are located in various states.

Clearly, the majority of the witnesses in each Plaintiff's case are located in the district where the Plaintiff worked for AT & T. Of course, many of those witnesses are AT & T employees, and AT & T could ensure their attendance wherever the trial was conducted. However, in each case, a large number of critical non-party, non-employee witnesses are located in the district where the Plaintiff worked. Thus, a trial in this District would deprive the Plaintiffs and AT & T of the ability to present important evidence live at trial. Accordingly, the Court concludes that the convenience of the witnesses would be best served by transferring the claims of Harryman, Hipp, and Talbert to the Districts where they worked.

## B. Location of Counsel

Counsel for the Plaintiff is located within this District, and Counsel for AT & T is located in Dallas. Thus, while this Court has consistently held that the location of counsel is entitled to the least consideration of the factors relevant to a transfer motion, see, e.g., Dupre, 810 F.Supp. at 826, to the extent it is relevant, this factor militates somewhat against a transfer.

## C. Location of Books and Records

■ Depending on the nature of the case, the location of books and records can be of paramount importance when deciding whether a case should be transferred. Dupre, 810 F.Supp. at 826; see also Mobil Corp. v. S.E.C., 550 F.Supp. 67, 70–71 (S.D.N.Y.1982) (transferring a case where over 7,000 documents were expected to be produced); American Fed. Casualty Agency, Inc. v. Cross Country Ins. Agency, Inc., 403 F.Supp. 1246, 1247 (E.D.Wis.1975) (refusing to transfer case where the substantial records of a corporation were at issue and were located in the district of that court). In the case at bar, AT & T's personnel and other corporate

U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). Under the circumstances of this case, the Court finds that AT & T filed its transfer motion reasonably promptly. Moreover, because there will be a delay in the resolution of the claims of Plaintiffs Harryman, Hipp, and Talbert by virtue of the severance of their claims, the usual justification

for denying transfer motion on timeliness grounds is not applicable here. See, e.g., Peteet, 868 F.2d at 1436 (affirming trial court's denial of transfer motion based in part the fact that transfer "would have caused yet another delay in this protracted litigation.").

records will likely be very important at trial, and the majority of these records will be located in the District where each Plaintiff worked. However, many documents are also in the possession of the Plaintiffs' attorney in this District. Thus, this factor weighs neither strongly for nor against transfer.

### D. Cost of Obtaining Attendance of Witnesses

■ In every case, the parties encounter certain unavoidable costs and obstacles in proceeding to trial. It is rare in federal court that the chosen forum is the least expensive for every individual involved in the dispute. However, with advances in communication, transportation, and the preservation of testimony, costs and other obstacles that were once oppressive are now usually surmountable. Nonetheless, the Court is concerned with cases in which the parties and witnesses live far from Galveston. In those situations, the Court will look closely at the costs to all parties of trying the case in this District. The Court will frequently transfer a case when the majority of the key witnesses live more than 100 miles from Galveston and thus outside the subpoena reach of the Court. *See, e.g., Bevil v. Smit Americas, Inc.,* 883 F.Supp. 168, 170 (S.D.Tex.1995).

Because the claims of Plaintiffs Harryman, Hipp, and Talbert have been severed, a separate trial of each claim will be required regardless of the disposition of AT & T's Motion to Transfer. Clearly, it will be somewhat more expensive to all parties to try four separate cases than it would have been to try one large, complex case. However, these additional expenses will be incurred whether or not the Court transfers the individual claims. Given that the majority of the witnesses in each case are located in the District where each Plaintiff worked and outside the subpoena reach of this Court, the Court concludes that transferring the cases will result in a reduction of the costs associated with obtaining the attendance of the key witnesses and will reduce the total costs associated with the prosecution of each individual claim. Accordingly, this factor weighs in favor of transferring the claims to the appropriate district.

### E. Place of the Alleged Wrong

■ The Court generally considers this factor to be very important in the venue determination, given that the Court's docket is extremely crowded, and suits involving plaintiffs who live and were injured in another judicial district work to delay the trials of resident plaintiffs. Here, neither Harryman, Hipp, nor Talbert are residents of this District, and the wrongs about which they complain did not occur within this District. The adverse employment decisions were made in the District where each Plaintiff worked by AT & T employees located in that District. Moreover, even if upper-level PIP officials were involved in the decisions to terminate the Plaintiffs, those officials are not located in this District. Thus, for the purposes of this Motion to Transfer, it is clear that the wrongs about which the Plaintiffs complain took place in the Districts where they worked. Therefore, this factor also weighs strongly in favor of transferring the claims of Plaintiffs Harryman, Hipp, and Talbert.

### F. Possibility of Delay or Prejudice if Transfer Granted

■ When considering a § 1404(a) Motion to Transfer, a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice." *Dupre,* 810 F.Supp. at 828. However, because the claims of Harryman, Hipp, and Talbert have been severed from the initial action, their claims will not proceed to trial as originally scheduled. Given the existing docket obligations of this Court, it would be some time before the Court could schedule trials for each of these Plaintiffs. Thus, whether or not their claims are transferred, some delay is inevitable. While the Court recognizes that a prompt resolution of claims is particularly important in cases of this nature, the possibility that a transfer may somewhat delay the ultimate resolution of a case alone cannot justify retaining a case that has no factual connection to this District. Thus, this factor does not support retaining the remaining cases in this District.

### G. Plaintiff's Choice of Forum

■ As a general rule, the Plaintiff's choice of forum is entitled to great deference.

*Dupre,* 810 F.Supp. at 828. Indeed, it is this Court's consistent practice to honor a Plaintiff's choice of forum where factually justified. *Id.* However, the Court gives the Plaintiff's choice of forum close scrutiny when the Plaintiff does not live within this District and the case bears little connection to the District. Where, as here, the other factors weigh strongly in favor of transferring the case, the Plaintiff's choice of forum alone cannot be controlling. *Coons v. American Horse Show Assoc., Inc.,* 533 F.Supp. 398, 400 (S.D.Tex.1982).

Therefore, after carefully considering the appropriate factors and balancing of the interests of the parties, the Court concludes that transferring the claims of Plaintiffs Harryman, Hipp, and Talbert will best serve the interests of justice. *See Adkins v. Kellwood Co.,* 1984 WL 1138 at *2 (W.D.N.C.1984) (severing and transferring claims of three of the four age discrimination plaintiffs to the districts where those had worked, concluding that any consideration of judicial economy outweighed by the factors supporting transfer). Accordingly, AT & T's Motion to Transfer is hereby **GRANTED IN PART** and **DENIED IN PART.** As to the claims of Plaintiffs Henderson and Bryan, the Motion is **DENIED.** As to the claims of the remaining Plaintiffs, the Motion is **GRANTED,** and the Court hereby **ORDERS** that Plaintiff Harryman's case be **TRANSFERRED** to the Atlanta Division of the Northern District of Georgia, that Plaintiff Hipp's case be **TRANSFERRED** to the Western Division of the Western District of Missouri, and that Plaintiff Talbert's case be **TRANSFERRED** to the Dallas Division of the Northern District of Texas.

### IV.  Conclusion

The Court recognizes that its ruling today will work some hardship on the Plaintiffs and will somewhat delay the resolution of the claims of Plaintiffs Harryman, Hipp, and Talbert. However, the prejudice likely to be suffered by AT & T if forced to defend against the Plaintiffs' claims in a single trial is simply too great. AT & T's right to a fair trial far outweighs any concerns of judicial

economy, delay, or increased costs that may arise from the severing and transferring these claims. However, to minimize the expense and inconvenience that may be caused by the Court's decision, the Court strongly encourages the parties to reach an agreement about the use in all actions of any discovery obtained in any one of the actions.[7] To the extent that there are witnesses who will appear in more than one action, the Court expects that the parties will agree to depose the witness only once. Given the nature and complexity of these cases, a cordial and cooperative relationship between the parties and their attorneys is crucial and will work to the benefit of all involved.

Because the claims of Plaintiffs Henderson and Bryan are scheduled for trial in this Court in August 1996, it is nearly certain that these claims will be tried before the others. To reduce the possibility of inconsistent verdicts, the Court is willing to *consider* the propriety of more detailed jury interrogatories designed to enhance the preclusive effect in the other actions of some of the issues resolved by the jury in this action. The propriety of any such interrogatories, of course, will be dependent on the evidence admitted and presented at trial, and the Court will make no definitive rulings on the issue until trial.

**IT IS SO ORDERED.**

---

**7.**  The Court recognizes and appreciates the stipulation offered by AT & T in this regard. *See* AT & T's Reply Brief in Support of Motion to Transfer at 8.