**Robert Lane DUPRE**

v.

**SPANIER MARINE CORPORATION, Clydesdale Corporation, M/V "SHIRE," and Lloyd's of London Insurance Company.**

Civ. A. No. G–92–442.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 13, 1993.

---

Carrie Weitinger, Weitinger & Weitinger, Houston, TX, Raleigh Newman, Bernard H. McLaughlin, Jr., Lake Charles, LA, for plaintiff.

Kent E. Westmoreland, Diane Fagan Robinson, Phelps & Dunbar, Houston, TX, for defendants.

## ORDER

KENT, District Judge.

In the instant action, the Plaintiff, a Louisiana resident, seeks compensation for injuries he allegedly suffered while working as a deckhand on a pushboat that was running barges between Freeport, Galveston, and Texas City, Texas. Two of the Defendants, Spanier Marine Corporation and Clydesdale Corporation, which are also Louisiana residents, filed a 28 U.S.C. § 1404(a) Motion to Transfer Venue. That motion and the Plaintiff's response are now before the Court. For the reasons set forth below, the Court DENIES the Defendants' motion.

This Court recently visited the law concerning attempts to change venue in *Continental Airlines v. American Airlines*, 805 F.Supp. 1392 (S.D.Tex.1992). In that case, the Court elucidated with excruciating detail the policies concerning, and procedures for determining, a motion to transfer venue.

Nevertheless, the Court has recently begun to encounter, with increasing frequency, personal injury actions similar to that *sub justice*. These generic cases are distinguished by the fact that they exclusively, or almost exclusively, involve only Louisiana parties, but, because of the fortuitous circumstance of the plaintiff's injury occurring in Texas, are properly maintainable in this Court. The defendants in these cases inevitably meet these actions with a motion to transfer venue. Therefore, the Court feels compelled to visit this area again for the benefit of educating others similarly situated who might contemplate the bring-

ing of actions in this Court or the transfer of actions from this Court.

At the outset, it must be noted that although this case is primarily a dispute between parties from Louisiana, venue is appropriate in any "judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced." 28 U.S.C.A. § 1391(a) (West Supp.1992). Because the plaintiff's accident took place while the pushboat was within the borders of Texas, venue is permissible in this Court.

28 U.S.C.A. § 1404(a) (1976) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." It is well settled that the party moving for a change of venue bears the burden of demonstrating why the forum should be changed. *See, e.g., Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966); *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987). Whether to transfer a case under this statute is a decision that rests within the sound discretion of the trial court. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988).

In reaching its decision, a court must consider several factors: the availability and convenience of witnesses and parties, the location of counsel, the location of books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum. *See, e.g., Hogan v. Malone Lumber, Inc.*, 800 F.Supp. 1441, 1443 (E.D.Tex. 1992); *United Sonics v. Shock*, 661 F.Supp. 681, 682–83 (W.D.Tex.1986); *Greiner v. American Motor Sales Corp.*, 645 F.Supp. 277, 278 (E.D.Tex.1986); *Coons v. American Horse Show Ass'n, Inc.*, 533 F.Supp. 398, 400 (S.D.Tex.1982); *Morgan v. Illinois Cent. R.R. Co.*, 161 F.Supp. 119, 120 (S.D.Tex.1958). The Court examines in turn each of these factors in the context of this case.

### A. Availability and Convenience of Witnesses and Parties.

This factor is arguably the most important of those listed. *See Fletcher v. Southern Pac. Transp. Co.*, 648 F.Supp. 1400, 1401–02 (E.D.Tex.1986); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3851 at 415 (1986). As this Court explained in *Continental Airlines*, 805 F.Supp. at 1396, in considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. The convenience of one key witness may outweigh the convenience of numerous less important witnesses. *See, e.g., Young v. Armstrong World Indus., Inc.*, 601 F.Supp. 399, 401–02 (N.D.Tex.1984). Furthermore, the moving party must do more than make a general allegation that certain key witnesses are needed. *See id.;* 15 Wright, Miller & Cooper, § 3851 at 425. The movant must specifically identify the key witnesses and outline the substance of their testimony. *Continental Airlines*, 805 F.Supp. at 1396.

If these requirements are met, this Court will often transfer a case in which most of the crucial witnesses expected to testify live more than one hundred miles from Galveston. This is particularly true if all parties reside out of Texas. However, this sentiment is tempered if these key witnesses are employees of the moving party. In such cases, the moving party can compel those witnesses to attend the trial. *See Galonis v. National Broadcasting Co.*, 498 F.Supp. 789, 793 (D.N.H.1980).

The Court recognizes that in the instant case this consideration is slightly skewed by the fact that, although many key witnesses were formerly employees of the Defendants, the Defendants cannot compel their attendance because the Defendants are no longer doing business. This fact does not change the Court's analysis of this case, however. The Court agrees with those cases that hold that when a trial requires the testimony of seamen, the availability and convenience of witnesses is

diminished as a factor in the change of venue analysis. *See Drees v. Lykes Bros. S.S. Co.*, 500 F.Supp. 15, 18 (S.D.N.Y.1980); *Medich v. American Oil Co.*, 177 F.Supp. 682, 683 (E.D.Pa.1959). The very nature of seamen's employment frequently makes them unavailable for trial, requiring the parties to submit the seamen's testimony in the form of depositions. *Medich*, 177 F.Supp. at 683.

Another consideration in analyzing the availability and convenience of witnesses is where the only result is to shift the balance of inconveniences from the moving party to the non-moving party. *See, e.g., Attock Oil*, 656 F.Supp. at 1167 n. 15; 15 Wright, Miller & Cooper § 3848 at 383–86. If the Court were to transfer this case, inconvenience shifting would occur. One of the Plaintiff's most important witnesses, his current treating physician, resides in the Houston area. By contrast, only two other key witnesses, a deckhand who witnessed the Plaintiff's accident and the Plaintiff's original physician, reside in Louisiana.[1] The other crucial fact witnesses apparently have residences scattered throughout Florida, Alabama, and Texas. The Court will not transfer this case for the mere convenience of two Louisiana witnesses. *See* 15 Wright, Miller & Cooper § 3851 at 424–25 (noting that courts have uniformly "refused to let applications for transfer become a 'battle of numbers'"). The primary result of this transfer would be to transfer the inconvenience to the Plaintiff's current doctor. Furthermore, the Court cannot fail to point out that for the key witnesses that reside in Florida and Alabama, the courts of both Louisiana and Texas are equally inconvenient. Thus, this Court is as good as place as any other in which to try this particular case.

### B. Location of Counsel.

■ The Court concurs with legion other courts that of the factors listed location of counsel is entitled to the least consideration.[2] However, the Court does feel that this factor is a concern when the primary counsel for both cases are not practitioners in the Southern District of Texas, (see *Inductotherm Corp. v. Pillar Corp.*, 417 F.Supp. 991 (E.D.Pa.1976)) particularly if other factors also point to a transfer. The Court will also give some weight to location of counsel if the plaintiff chooses local counsel to bring the suit. This fact goes to the plaintiff's choice of forum, which *is* entitled to great deference.[3] However, the Court will never take the location of counsel into its deliberations if the transfer only serves the convenience of the moving party's counsel and inconveniences the non-moving party's counsel. Attorneys today practice in broad geographical areas. This Court, with its liberal extension of *pro hac vice* privileges, allows attorneys from all over the country to appear on its docket.

In the instant case, the primary counsel of both parties are indeed from Louisiana. However, this fact is somewhat tempered by the fact that the Plaintiff's counsel recently: associated itself with a local attorney who is known and respected by this Court; opened an active office in Galveston; and petitioned to be admitted to practice before the Courts of the Southern District of Texas. Furthermore, the location of the parties' counsel is overshadowed by the other factors indicating that the case should remain in Galveston. The Court will not transfer this case based upon the mere fact that the lead attorneys for both parties are from Louisiana.

### C. Location of Books and Records.

In some cases, the location of books and records is of paramount importance to whether a case should be transferred. *Mobil Corp. v. S.E.C.*, 550 F.Supp. 67, 70–71

---

1. The Defendants also point to the corporate officers and office personnel of the Defendants as key witnesses, but the Court's experience is that these individuals will contribute relatively little, if anything, to resolution of this case.

2. Indeed, the vast majority of cases hold that this factor is entitled to little or no consideration at all. *See* 15 Wright, Miller & Cooper § 3850 at 412–13 n. 5–6 (1986) (listing no less than sixty-one cases in which either of these conclusions was reached).

3. *See infra.*

(S.D.N.Y.1982) (district court transferring a case where over 7000 documents were expected to be produced); *American Fed. Casualty Agency, Inc. v. Cross Country Ins. Agency, Inc.,* 403 F.Supp. 1246, 1247 (E.D.Wis.1975) (district court refusing to transfer case where the substantial records of a corporation were at issue and were located in the district of that court). A personal injury action is typically not such an action, however. In fact, it is disingenuous for a moving party to assert otherwise unless predicated upon a specific recitation of the location and importance of the relevant documents. *See Standard Office Sys. v. Ricoh Corp.,* 742 F.Supp. 534, 538 (W.D.Ark.1990); *Crawford & Co. v. Temple Drilling Co.,* 655 F.Supp. 279, 281 (M.D.La.1987). The liability question is usually proven through eyewitnesses rather than documents, and the damages issue, while normally entailing the production of some records, usually does not involve enough documents as to be an overwhelming factor. Moreover, even if the number of documents is relatively large, under Local Rule 11, the admissibility of documents is determined before trial. The Court can assure the parties that they will need to transport to Galveston only those relevant, noncumulative documents necessary for trial. Thus, the location of books and records is not a factor in the instant analysis. *See also STX, Inc. v. Trik Stik, Inc.,* 708 F.Supp. 1551, 1556 (N.D.Cal.1988) (in absence of other grounds justifying transfer, location of defendant's records was insufficient to compel change of venue).

### D. Cost of Obtaining Attendance of Witnesses.

In any case, parties encounter certain unavoidable costs and encumbrances in going to trial. It is rare in federal court that the chosen forum is the least expensive venue for every individual affiliated with the dispute. Otherwise, there is usually a lack of diversity, and the suit must be tried in state court. Notwithstanding, with advances in communication, transportation, and the preservation of testimony, costs and encumbrances that were once oppressive are now usually surmountable. Addi-

tionally, parties can also keep costs down by taking advantage of this Court's liberal policy of allowing the succinct presentation of deposition testimony at trial.

However, this Court is certainly concerned with cases in which all parties and witnesses live far from Galveston. In those situations, the Court will look closely at the costs to both parties of trying the case here.

In this case, the witnesses and parties are spread throughout four states. Trial of this case will engender significant costs to both parties no matter where the trial is held. Consequently, the Court does not feel that the costs of obtaining witnesses at trial here is a factor in determining whether to change venue.

### E. Place of the Alleged Wrong.

■ This Court possesses a compelling interest in ensuring that individuals who are injured within this district receive prompt and fair compensation for their injuries. Therefore, in this case, and in general, if a plaintiff's injuries occur within the Southern District of Texas, this Court gives great weight to the plaintiff's choice of this court as the forum in which to seek relief. However, this factor, like the other factors, is only part of the equation. *See Atlantic Richfield Co. v. Stearns–Roger, Inc.,* 379 F.Supp. 869, 871 (E.D.Pa.1974) (stating that the final determination on a motion to transfer venue does not depend entirely on the situs of the tort). If a case's *only* connection with this venue is that the events giving rise to the suit took place in Texas, then the Court will closely scrutinize whether it is appropriate for that action to remain here.

### F. Possibility of Delay or Prejudice in Transfer Granted.

When considering a § 1404(a) motion to transfer, "[a] prompt trial ... is not without relevance to the convenience of parties and witnesses and the interest of justice." *Fannin v. Jones,* 229 F.2d 368, 369–70 (6th Cir.), *cert. denied,* 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956). The Court is

certain that, because it has wholeheartedly embraced the policies and goals of the Civil Justice Reform Act of 1991, and because it has enjoyed enormous support from its bar in its pursuit of the Act's lofty aspirations, it can and consistently does dispose of cases at least as expeditiously and cost-efficiently as any other court in the surrounding geographical area. In the calendar years of 1991–1992, this Court closed an annual average of 623.5 civil cases, well above the averages for the same time period for any other district court in the Western District of Louisiana or the Eastern and Southern Districts of Texas. Furthermore, the trial track at this Court is, for most cases, between three to seven months from the Rule 16 conference, well below the average trial track for any other Court in the same area. For example, the Court has already given this case a firm trial date of June 21, 1993, six months and one week from the Rule 16 conference. Because of the earnest desire of this Court to bring the cases on its docket promptly to trial, the possibility of delay or prejudice if the case is transferred will always play a large role in this Court's analysis. *See Pendleton v. Burlington Northern, Inc.*, 761 F.Supp. 1359, 1360 (N.D.Ill.1991) (motion to transfer venue denied where firm trial date had been set and district court had relatively small backlog of cases); *but see Foster v. Litton Industries, Inc.*, 431 F.Supp. 86, 88 (S.D.N.Y.1977) (holding that docket conditions are only one factor to be considered and, where other relevant facts overwhelmingly favor transfer, the congestion in another court will not preclude a transfer).

### G. Plaintiff's Choice of Forum.

As previously explained elsewhere, this Court subscribes to the view that, while it cannot be said with certainty that a court must exercise a strong presumption in favor of the plaintiff's choice of forum, the choice is at least entitled to great deference. *See Continental Airlines*, 805 F.Supp. at 1394 and the cases cited therein; *see also Manning*, 366 F.2d at 698 (plaintiff's choice of forum is "highly esteemed"); *Rippy v. Crescent Feed Commodities, Inc.*, 710 F.Supp. 1074, 1079 (S.D.Miss.1988) (plaintiff's choice of forum is entitled to great weight, especially when that choice is in the plaintiff's home state). Indeed, it is this Court's consistent practice to honor a plaintiff's choice of forum, where factually justified. *Accord United Sonics*, 661 F.Supp. at 683 (holding that a plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). However, the Court gives the plaintiff's choice of forum close scrutiny when the plaintiff does not live in the Southern District of Texas. Further, this Court is loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification.

The circumstances of this case give the Court fair reason to initially apprehend that forum shopping may be a significant factor for this suit's location in Galveston. This case is almost exclusively a dispute between residents of Louisiana. Although the Plaintiff's injuries certainly occurred in the Southern District of Texas, the residences of the parties and the Plaintiff's lead counsel make the Western District of Louisiana a clearly logical place to bring suit. Indeed, that this case belongs in a Louisiana court is suggested in the fact that the Louisiana Plaintiff's counsel included Lloyd's of London as a defendant, apparently seeking to assert a direct action against the underwriter. Direct actions against insurers, while permissible in Louisiana, are not permitted in Texas. The Court suspects that the seminal reason that the Plaintiff filed suit here is this Court's ostensible reputation for quickly resolving personal injury cases. While this Court is genuinely gratified that numerous members of the Louisiana bar evidently hold this Court in high esteem, the Court cautions that it cannot allow actions that possess virtually no responsible connection with the Southern District of Texas to remain on its docket. However, after comprehensive analysis, the other circumstances discussed above indicate that this case has sufficient nexus with this venue as to convince the Court that the Plaintiff

contemplated other factors beside mere forum shopping when he chose this forum.

In light of the above considerations, the Court concludes that this case should not be transferred from this venue. Despite an arguable forum shopping situation, which to some extent ameliorates the significance of the plaintiff's choice of forum, the Defendants have failed to demonstrate that the balance of factors necessitates a transfer. Crucial to the Court's decision is that the most important factor, the availability and convenience of the parties and witnesses, would not be significantly improved by a transfer. In fact, a change in venue would simply transfer inconvenience to one of the Plaintiff's key witnesses. Furthermore, the Plaintiff's injuries took place near this Court and the Court is certain that it can provide a resolution to this case as quickly as any other forum. As to the other elements, the location of books and records pertinent to this case and the cost of obtaining attendance of witnesses are not significant factors and the location of the parties' counsel, a factor of little import to begin with, while initially pointing towards a transfer, is tempered by the circumstances explained above.

Therefore, Defendant's Motion to Transfer Venue is DENIED. The parties shall file no further pleadings on this issue, in this Court. The Court recommends that both parties refrain from engaging in any further procedural wrangling and concentrate on the substantive resolution of this suit either through settlement or diligent preparation for the now-scheduled trial.

IT IS SO ORDERED.