SMI–OWEN STEEL COMPANY, INC.

v.

ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY, and J & H
Marsh & McLennan.

No. Civ.A. G–00–149.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 18, 2000.

Francis I Spagnoletti, Spagnoletti & Assoc, Houston, TX, for SMI–Owen Steel Co, Inc, plaintiff.

Anne Marie Finch, Jackson and Walker, Houston, TX, Michael Lee Knapek, Jackson & Walker, Dallas, TX, for St Paul Fire & Marine Insurance Company, defendant.

Julia M Adams, Houston, TX, for J & H Marsh McLennan Inc, defendant.

### ORDER DENYING MOTION TO TRANSFER VENUE

KENT, District Judge.

This case concerns a subcontractor default protection insurance policy issued by Defendant St. Paul Fire & Marine Insurance Company and its agent co-Defendant J & H Marsh McLennan, Inc. in connection with the construction of the Aladdin Hotel in Las Vegas, Nevada. The Plaintiff, SMI–Owen Steel Company Inc., alleges that the Defendants failed to live up to the terms of the agreement and made misrepresentations regarding the policy.

Now before the Court is Defendant St. Paul's Motion to Transfer Venue, filed April 28, 2000, joined by J & H Marsh on the same day. For reasons set forth in more detail below, Defendant's Motion To Transfer Venue is **DENIED**.

### I. Analysis

St. Paul and J & H Marsh seek a transfer to the U.S. District Court for the District of Nevada, Las Vegas Division, based on 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed.").

Of course, whether to transfer the case rests within the sound discretion of the Court, and its determination is reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion." (citation omitted)); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974) (declaring

that whether to transfer venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

■ The Court weighs the following factors when deciding whether a venue transfer is warranted: the availability and convenience of witnesses and parties, the location of counsel, the location of pertinent books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996) (Kent, J.); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993) (Kent, J.); *Continental Airlines Inc. v. American Airlines Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (Kent, J.) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)).

### 1) *Availability and Convenience of the Witnesses and Parties*

Of the six factors weighed by the Court, this factor is probably the most important. *See Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1166 (S.D.Tex.1994); *Continental Airlines,* 805 F.Supp. at 1396.

### A. Witnesses

■ Although the Defendants name some potential witnesses who reside in Nevada, the key witnesses in this case reside in the Southern District of Texas or outside of both Texas and Nevada. Thus, Defendants have failed to meet their burden of showing that Nevada is a more convenient forum than Texas with regard to witnesses.

The Defendants name the owners of Black Hawk Precast Company and Sorensen's Construction, two of the alleged defaulting subcontractors, as important non-party witnesses who reside in Nevada.

Defendants also name as a potential witness an employee of Tri–Star Theme Builder who directed work being performed for Black Hawk. In addition, the Defendants list various other subcontractors who are alleged to have defaulted, subcontractors with claims pending against SMI, and employees of Fluor Daniel, the general contractor, as likely witnesses. Other than noting that these witnesses will testify about whether the subcontractors were in default, the Defendants give no indication of what the testimony of these witnesses will be. At an absolute minimum, Defendants must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify in Galveston. *See LeBouef v. Gulf Operators, Inc.,* 20 F.Supp.2d 1057, 1060 (S.D.Tex.1998) (Kent, J.). In addition, without a summary of the testimony, there is no way for the Court to determine if such testimony is cumulative or unnecessary for trial.

Moreover, it is important to remember that this is not a suit between SMI and the subcontractors, but rather one between SMI and its insurance company. As the Defendants have not filed an Answer, it is not even clear that the default of the subcontractors will be a contested issue. The only statement made in this regard comes in Defendant's Reply Memorandum which states "[t]o the extent that St. Paul will be relying on this exclusion at trial [that there was no subcontractor default], the only feasible way that St. Paul could meet its burden in this regard would be through the testimony of Black Hawk, Sorensen's, and Eagle Creek." (Def.'s Reply Memo. 5). Thus, the Defendants do not unequivocally state that they will be contesting whether a default occurred.

If the Defendants' failure to provide a summary of the witnesses' testimony were the only problem with Defendants' Motion, the Court would certainly allow Defendants to amend their Motion to make such a showing. Similarly, if asserting a no

default defense were all Defendants needed to do to cure their Motion, the Court would allow such an amendment. However, no amendment is necessary because the Court finds that even assuming that all these witnesses would provide relevant, non-cumulative testimony not available from any other source, this factor does not, given the precise facts of this case, compel a change of venue.

For any Nevada witnesses, depositions and the like can be taken in the District of Nevada at Plaintiff's initial expense. The parties can also keep costs down by taking advantage of this Court's liberal policy of only allowing the most succinct presentation of deposition testimony at trial.

■ Furthermore, in determining the convenience of witnesses, more important than the numbers of the witnesses residing in a particular place is the residence of *key* witnesses. As this Court has noted before, "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Dupre*, 810 F.Supp. at 825. *See also* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 (1986) (noting that courts have uniformly "refused to let applications for transfer become a 'battle of numbers' ").

By Defendants' own admission, St. Paul's principal witnesses reside in Minnesota and North Carolina.[1] J & H Marsh's principal witnesses reside in Massachusetts and Washington, D.C.[2] It can hardly be said of any of these witnesses that Nevada is more convenient than Texas.

SMI's principal witnesses includes an important non-party witness, Mr. John Hey Donegan, who resides in Texas.[3] Another SMI witness, Mr. Carlisle Maxwell, resides in Seguin, Texas and maintains an office in Victoria, Texas. Plaintiff's counsel for the underlying subcontractor claims against SMI resides in Atlanta. Additionally, Mr. David Sudbury, Corporate Counsel for SMI works in Dallas. Plaintiff has also hired an expert economist located in this district.[4]

■ Keeping in mind that if key witnesses are employees of the party seeking transfer, "their convenience is entitled to less weight because that party will be able to compel their testimony at trial," *Continental Airlines*, 805 F.Supp. at 1397, this court finds that the presence of all or most of the key witnesses in Texas or at least outside of Nevada weighs heavily against transfer to the District of Nevada.

### B. Parties

■ When determining the relative conveniences of transfer, the Court also considers the residence of the parties in the case. In this case, none of the parties are residents of Texas or Nevada. Plaintiff SMI is a South Carolina corporation with its principal place of business in South Carolina, although it does business in Texas. Defendant St. Paul is a Minnesota corporation with its principal place of business in Minnesota. Defendant J & H Marsh is a Massachusetts corporation with its home office and principal place of busi-

---

1. James E. Conroy, the Regional Vice President of St. Paul resides in St. Paul, Minnesota and Lisa H. Davis, Construction Underwriting Specialist resides in Charlotte, North Carolina.

2. Phillip L. Luecht and Marc R. Landry, both Senior Vice Presidents, and Thomas C. Tenerowicz, Vice President, reside in Boston Massachusetts; David Moylan, Vice President, resides in Washington, D.C.

3. Mr. Donegan is current Manager of Contract Services for the CMC Steel Group, the parent company of SMI and resides in San

Antonio, Texas but works in the Southern District of Texas.

4. The convenience of expert witnesses is often accorded less weight than that of non-party witnesses. *See, e.g., Houston Trial Reports, Inc. v. LRP Publications, Inc.,* 85 F.Supp.2d 663, 669 (S.D.Tex.1999). *But see Continental Airlines,* 805 F.Supp. at 1397 n. 12 (arguing that it is possible in a certain case that an expert witness could be a key witness). In this case, the location of the Plaintiff's expert weighs slightly against transfer of venue.

ness in Massachusetts. Since none of the parties reside is Nevada, the Court concludes that the residence of the parties does not support a transfer to the Las Vegas Division.

### 2) Location of Counsel

 Although this factor is entitled to the least consideration, the Court notes that it does "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *Dupre*, 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little or no consideration). The attorneys for both Plaintiff and Defendant maintain offices in the Southern District of Texas. These facts weigh slightly against a transfer to Las Vegas.

### 3) Location of Books and Records

 Defendant argues that most of the records relevant to this case are located at or near the construction site. At issue in this case, however, is an insurance policy and the handling of a claim. Documents related to insurance will be located at the insurance company, not at the site of the default. Here, none of the parties involved reside in Nevada. But even if the majority of relevant documents were located in Nevada, not all the documents will be needed for trial, and "documents can be produced and examined anywhere for discovery purposes." *Continental Airlines*, 805 F.Supp. at 1397.

### 4) Trial Expenses

 It is rare that the forum in which the case is litigated is the most convenient or the least costly for all parties involved. Although the burden rests with Defendant, it proffers no specific information regarding the expenses and costs associated with the trial of this case in Galveston *vis-à-vis* Las Vegas. In any case, the Plaintiff has offered to pay "the cost of Defendant's witnesses' travel and expenses for trial," rendering any claim of extra expense due to witness travel moot. (Response of

Plaintiff in Opposition to Defendant's Motion to Transfer Venue at 9). The court therefore concludes that this factor does not support a transfer.

### 5) Place of the Alleged Wrong

 The Court generally considers the place of the alleged wrong to be a very important factor in venue determination. *See Henderson*, 918 F.Supp. at 1067 (observing that suits by non-residents can work to delay the trials of resident plaintiffs). However, "this factor, like the other factors, is only part of the equation." *Dupre*, 810 F.Supp. at 827.

 Defendant maintains that the place of the alleged wrong is the location of the construction site, namely Las Vegas. Again, it bears repeating that this is not a case against the subcontractors, but rather one against the insurance company. The wrongs that SMI alleges St. Paul and J & H Marsh committed occurred in Boston, at St. Paul's office, when St. Paul allegedly failed to live up to its agreement. *See Nobel Ins. Co. v. Acme Truck Line, Inc.*, 2000 WL 298908 (N.D.Tex. March 21, 2000) (refusing to transfer an insurance case to the division where the underlying accident took place); *AVEMCO Ins. Co. v. GSF Holding Corp.*, 1997 WL 566149, *6 (S.D.N.Y. September 11, 1997) (noting that the locus of operative facts was where conversations leading to an insurance policy were held). Thus, the place of the alleged wrong does not support a transfer to Las Vegas. Consequently, the Court declines to disturb Plaintiff's choice of forum.

### 6) Possibility of Delay and Plaintiff's Choice of Forum

 A plaintiff's choice to litigate his case in the Galveston Division of the Southern District is normally given great deference. *See Peteet*, 868 F.2d at 1436; *Carlile v. Continental Airlines, Inc.*, 953 F.Supp. 169, 171 (S.D.Tex.1997) (Kent, J.); *see also United Sonics, Inc. v. Shock*, 661

F.Supp. 681, 683 (W.D.Tex.1986) (asserting that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Of course, close scrutiny is given to Plaintiff's choice of forum when the Plaintiff does not live in the Southern District. *See, e.g., Dupre*, 810 F.Supp. at 828 (explaining that while it is the "Court's consistent practice to honor a plaintiff's choice of forum where factually justified" the Court is also "loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification."). It does not appear to the Court that Plaintiff is engaged in blatant forum shopping.

▆ The Defendant suggests that an "overwhelming [criminal] caseload" in this court warrants a transfer to Las Vegas. (Motion to Transfer at 9). Defendants cite the 1999 Year–End Report of the Federal Judiciary for the proposition that there is a workload crisis in U.S. border areas. *See id.* at 10. First, although Galveston, as a coastal city, does contain an international seaport, it is located over three hundred miles from the Mexican boarder. Second, while this Court certainly appreciates Defendants' concern for its large docket, the fact of the matter is that this Court's criminal docket is small by comparison to those of most courts. Although the number of criminal filings in the Southern District may be up, as the Defendants note, this Court's criminal docket as of July 2000 consisted of a mere twenty-five cases. In 1999, there was one criminal trial. Furthermore, despite a crushing civil caseload, this Court has one of the speediest dockets in the country. The trial track in the Court is, for most cases, between three to seven months from Rule 16 conference, well below the average trial track for most courts around the country. This Court closed 739 civil cases in calendar year 1999. As of July 31, 2000, this Court has closed 369 civil cases, the second highest number of civil case closings in the Southern District of Texas. Thus, there is actually a greater danger of delay and prejudice if this case were to be transferred, than if it remains in Galveston.

## II. CONCLUSION

▆ After careful consideration of the relevant factors in light of the facts in this case, the Court concludes that Defendants have failed to carry their burden of demonstrating that a transfer is necessary to serve the interests of justice or the convenience of the witnesses and parties. Thus the Court declines to disturb the forum chosen by Plaintiff and introduce the likelihood of delay inherent in any transfer simply to avoid the insignificant inconvenience that Defendants may suffer by litigating this matter in Galveston rather than Las Vegas. The Court realizes that Plaintiff is not a resident of the Galveston District, but for whatever reason, he has chosen to file his suit here and the Court finds, given the totality of the circumstances, no factors outweigh this choice.

Thus, for the reasons stated above, Defendants' Motion to Transfer Venue is hereby **DENIED. IT IS SO ORDERED.**