Geoffrey **MCGINNIS, Individually and as Next Friend of Geoffrey McGinnis, Jr., Caitlin McGinnis, and Brandon McGinnis, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

No. CIV.A.G–01–597.

United States District Court, S.D. Texas, Galveston Division.

Jan. 10, 2002.

---

Arnold Anderson Vickery, PC, Houston, TX, for Plaintiffs.

Douglas W. Poole, McLeod, Alexander, et al., Galveston, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

KENT, District Judge.

This is a pharmaceutical products liability action in which Plaintiff Geoffrey McGinnis ("McGinnis") claims that his wife's ingestion of Prozac, an antidepressant medication manufactured by Defendant Eli Lilly and Company ("Lilly"), caused her to commit suicide. Now before the Court is Defendant's Motion to Transfer Venue to the Western District of North Carolina. For the reasons articulated below, Defendant's Motion is hereby **GRANTED**.

### I.

Plaintiff Geoffrey McGinnis and his late wife Millie McGinnis ("decedent") began dating in high school in Southern California. After graduation, Plaintiff joined the United States Navy, and married decedent on June 29, 1990 near the naval base in Norfolk, Virginia. During the first several years of their marriage, the McGinnises lived in various locations throughout the country and the world. When Plaintiff completed his tour of duty, the McGinnises returned to Southern California, where they resided until July of 1999. At that time, the McGinnises moved to Ohio to be closer to Plaintiff's family. Two months later, the McGinnises uprooted for the final time together to Lenoir, North Carolina, where they lived until the time of Millie McGinnis' death.

The events immediately leading up to decedent's suicide all took place in North Carolina. On September 14, 1999, after suffering from bouts of depression and anxiety, decedent's friend, Susan Higgins, took decedent to meet with Thomas P. Hensley ("Hensley"), a licensed professional counselor at Foothills Area Program ("Foothills") in Morganton, North Carolina, for a "crisis intervention emergency assessment." Decedent explained to Hensley that she was under considerable stress induced by two recent moves, the birth of a premature child, and the drowning death of her son two years earlier. Based on Hensley's referral, decedent returned to Foothills on September 20, 1999 to see Kevin Kilbride, M.D. ("Dr. Kilbride"). During that visit, Dr. Kilbride diagnosed decedent with major depression and prescribed a thirty-day supply of Prozac. On October 3, 1999, less than two weeks after being prescribed Prozac, twenty-seven year old Millie McGinnis shot herself in the head on the front deck of her home in Lenoir, North Carolina while her children were playing in a nearby room. Immediately following the suicide, Plaintiff rushed his children to the home of his landlord, Tony C. Pennell ("Pennell"), while Caldwell County Sheriff's Detectives investigated the scene and took witness statements. Decedent's body was taken to Caldwell County Memorial Hospital, where it was examined by George L. Nichols, Jr., M.D. ("Dr. Nichols"). A postmortem blood sample was obtained from decedent's body and shipped to a toxicology laboratory in Chapel Hill, North Carolina. Following these tragic events, Plaintiff and his three children relocated to Houston, Texas. On October 1, 2001, Plaintiff filed suit in this Court alleging causes of action for strict products liability, negligence, negligence per se, and breach of implied warranty. On November 6, 2001, Lilly filed a Motion to Transfer Venue, to which this Court now turns.

### II.

Defendant seeks a transfer pursuant to the Court's discretionary venue powers under 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed.").

■ The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974) (declaring that whether to transfer venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

■ In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled

to great deference. *See, e.g., Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1065 (S.D.Tex.1996) (Kent, J.); *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993) (Kent, J.); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (Kent, J.) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)).

■ Lilly maintains that Plaintiff's case should be transferred to the Western District of North Carolina principally because: (1) all of the key witnesses excepting Plaintiff and decedent's parents reside in North Carolina; (2) the alleged wrong occurred in North Carolina; (3) it would be more expensive to litigate this case in Galveston than in North Carolina; and (4) Plaintiff will not suffer undue delay or prejudice from a venue transfer since Defendant filed its Motion at such an early stage in the litigation. In response, Plaintiff points out that: (1) the most important witnesses, Plaintiff and his three children, reside in the Southern District of Texas; (2) other key witnesses, such as Plaintiff's and decedent's parents, live in states outside of North Carolina; (3) the remaining witnesses identified by Defendant are either not crucial for trial or will likely appear to testify at trial; (4) the alleged wrong occurred mostly at Lilly's headquarters in Indianapolis, Indiana; (4) Plaintiff's Counsel has offices in Houston, and Defendant's Counsel has offices in Galveston; and (7) Plaintiff will suffer undue delay and prejudice from a venue transfer.

1. *Availability and Convenience of the Witnesses and Parties*

■ This Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Gundle Lining Constr.*

Co. v. Fireman's Fund Ins. Co., 844 F.Supp. 1163, 1166 (S.D.Tex.1994); *Continental Airlines,* 805 F.Supp. at 1396. At an absolute minimum, Defendant must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify in Galveston. *See LeBouef v. Gulf Operators, Inc.,* 20 F.Supp.2d 1057, 1060 (S.D.Tex.1998) (Kent, J.). Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial. In the instant case, Lilly emphasizes that the vast majority of key witnesses reside in North Carolina and therefore fall outside of the subpoena power of this Court. Lilly specifically identifies and summarizes the likely testimony of ten potential fact witnesses whose testimony is crucial for trial: Dr. Kilbride, the physician who prescribed Prozac to decedent; Thomas Hensley, the licensed professional counselor who referred decedent to Dr. Kilbride; Jimmy and Mildred Duke, decedent's parents who live in California; Brian and Susan Higgins, friends of the McGinnises with whom the McGinnises briefly lived while in Lenoir; Tony Pennell, the landlord of the McGinnises for a short period of time in Lenoir; Caldwell County Sheriff's Officers, particularly those who investigated the scene of decedent's suicide and took witness statements; Dr. Nichols, the doctor who examined and obtained a postmortem blood sample from decedent's body; and the Office of the Chief Medical Examiner, where decedent's postmortem blood sample was analyzed. All of these witnesses, with the exception of decedent's parents, reside in or around Lenoir, North Carolina.

In its Response, Plaintiff attempts to characterize the witnesses identified by Lilly as inconsequential for trial, and argues instead that the most important witnesses to this dispute are Plaintiff and his three children, who currently reside in Houston, Texas; Brian and Susan Higgins, who are likely to appear for trial because of their friendly relationship with Plaintiff; and decedent's parents, who live in California. Plaintiff further asserts that the other witnesses identified by Lilly, including the mental health professionals who treated decedent, are incidental to the adjudication of this case, and that testimony presented by deposition, in lieu of testimony at trial, would suffice for all of these witnesses. The Court disagrees. Although Dr. Kilbride and Thomas Hensley may have met with decedent for only brief periods of time, they still represent the only mental health professionals to have treated and diagnosed decedent's depression. Not only is Dr. Kilbride the only known physician to have prescribed Prozac to decedent, the very drug that Plaintiff now claims caused his wife's death, but he is the only individual who can testify as to whether or not Lilly failed to warn and/or made material misrepresentations to him regarding Prozac's safety, as specifically averred by Plaintiff. In light of these compelling facts, it is bordering on absurd for Plaintiff to suggest that the testimony of either Dr. Kilbride or Thomas Hensley is somehow inconsequential to the resolution of this case.

The same can be said of decedent's friends and neighbors in Lenoir, North Carolina. Irrespective of the fact that decedent lived in Lenoir for only a month before committing suicide, the persons who interacted with her during that short period of time can provide unique testimony on decedent's mental health and well-being immediately prior to and following her ingestion of Prozac. These persons

include Plaintiff and his oldest child,[1] Brian and Susan Higgins, and Tony Pennell. The Court recognizes that Plaintiff and his family, who now reside in Houston, may be inconvenienced by a transfer to North Carolina, but the Court is also keenly aware that Plaintiff and his oldest child are the *only* key witnesses identified by either Party who are subject to the subpoena power of this Court. Although Plaintiff muses that Brian and Susan Higgins would most likely appear at trial because of their friendly relationship with McGinnis, this is nothing more than mere conjecture. In addition, the testimony of Caldwell County Sheriff's Officers who investigated the suicide scene, as well as those persons involved in examining decedent's body and postmortem blood sample, is also relevant, especially if Plaintiff challenges the results of the postmortem blood analysis, as Defendant speculates. The only other key witnesses identified by Plaintiff, including the parents of decedent and Plaintiff, are located in states other than North Carolina and Texas, making their places of residency unimpressive upon the venue analysis. Although the Court realizes that at least some witnesses' testimony would be more appropriately presented by deposition, a retention of this case would conceivably deprive Lilly of the opportunity to present any live witness testimony whatsoever-a result this Court is unwilling to impose. Furthermore, those witnesses who are willing to testify at trial without subpoena would be grossly inconvenienced by having to travel 800 miles to the Galveston Division courthouse, rather than approximately 50 miles to the nearest federal courthouse in the Western District of North Carolina. Viewed cumulatively, then, this factor weighs heavily in favor of a transfer to North Carolina.

In addition to assessing the availability and convenience of witnesses, the Court also considers the location of the Parties. Here, Plaintiff and his family reside in Houston, Texas, while Defendant is headquartered in Indianapolis, Indiana. While Plaintiff is located in the Southern District of Texas, the Court notes that he does *not* live in the Galveston Division, but rather the Houston Division. Furthermore, given Plaintiff's propensity for relocating, the permanency of Plaintiff's residency in Texas is dubious at best. As such, the Court places minimal weight upon Plaintiff's tenuous connection to the Galveston Division and the Southern District of Texas.

## 2. *Location of Counsel*

■ Although this factor is entitled to the least consideration, the Court notes that it does "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *Dupre,* 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little or no consideration). In the case at hand, both Plaintiff and Defendant have employed local counsel in the Southern District of Texas, in Houston and Galveston respectively. Although bearing little consequence, this factor slightly supports retention.

## 3. *Location of Books and Records*

■ The location of books and records is not of paramount importance in a personal injury action. *See id.* at 826–27 (noting that a personal injury suit is typically not the type of action where books and records are vital); *Continental Airlines,* 805 F.Supp. at 1397 (observing that in a

---

**1.** Two of decedent's children were under the age of two years old at the time of their mother's suicide. As a result, only the oldest McGinnis child could possibly provide any useful testimony on the circumstances surrounding Millie McGinnis' death.

personal injury case "it is unlikely that all ... relevant documents will be needed for trial, and ... documents can be produced and examined anywhere for discovery purposes"). In this case, neither Plaintiff nor Defendant have attempted to identify potential sources of proof or their relevance to this case. Thus, this factor does not impact the venue analysis.

### 4. *Trial Expenses*

Neither Party provides specific information on the expenses and costs associated with trial in Galveston versus North Carolina. However, because the vast majority of key witnesses reside in the Western District of North Carolina, the Court may reasonably conclude that a trial in North Carolina would be more cost efficient than its counterpart proceeding in Galveston. This factor therefore supports transfer.

### 5. *Place of the Alleged Wrong*

■ The Court generally considers the place of the alleged wrong to be a very important factor in venue determinations. *See Henderson*, 918 F.Supp. at 1067 (observing that suits by nonresidents can work to delay the trials of resident plaintiffs). However, "this factor, like the other factors, is only part of the equation." *Dupre*, 810 F.Supp. at 827. In the instant case, the Parties dispute the exact location of the alleged wrong. Defendant maintains that the wrong occurred in North Carolina, since Plaintiff bases his causes of action upon Lilly's material misrepresentations and/or failure to warn prescribing physicians and consumers (in this case, located in North Carolina) of the foreseeable risks associated with the administration of Prozac. In contrast, Plaintiff asserts that the wrong primarily took place at Lilly's headquarters in Indianapolis, Indiana, where the initial decision was made to mislead or not to warn physicians

and consumers about the dangers of Prozac. The Court finds Plaintiff's argument wholly unconvincing. In its Complaint, Plaintiff avers that Millie McGinnis' death was proximately caused by Lilly's affirmative misrepresentations and/or failure to warn consumers, via their prescribing physicians or otherwise, of the risks involved in taking Prozac. In this case, then, the alleged wrong most likely occurred in North Carolina, since Lilly failed to warn and/or communicated false information to the prescribing physician, Dr. Kilbride, and the consumer, Millie McGinnis, in North Carolina. Even if this Court were to adopt Plaintiff's view that the alleged wrong occurred entirely in Indiana, this fact would still not support retention of the case in the Southern District of Texas. Thus, to the extent that the place of the alleged wrong can be ascertained, this factor weighs in favor of transfer.

### 6. *Possibility of Delay and Plaintiff's Choice of Forum*

Finally, a Plaintiff's decision to litigate his case in the Galveston Division of the Southern District of Texas is normally entitled to great deference. *See Peteet*, 868 F.2d at 1436; *Carlile v. Continental Airlines, Inc.*, 953 F.Supp. 169, 171 (S.D.Tex. 1997) (Kent, J.); *see also United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 683 (W.D.Tex.1986) (asserting that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). As a general rule, this is especially true when the Plaintiff resides in the Southern District of Texas. However, in the instant case, Plaintiff lives in the Houston Division of the Southern District of Texas and has no apparent connection to the Galveston Division. Although the Court is flattered that Plaintiff has selected this forum to redress his grievances, and deeply sympathizes with the tragic loss that Plaintiff's

family has endured, there simply exists no basis for laying venue in Galveston. Instead, the utter dearth of contacts between Plaintiff's case and the Southern District of Texas exemplifies nothing less than blatant forum shopping. While the Court recognizes that a venue transfer may well result in Plaintiff losing the benefit of this Court's expeditious and cost-efficient manner of handling cases, the mere fact that Plaintiff may suffer some delay in having his claim adjudicated will not, in light of the totality of the circumstances, sufficiently militate against transfer.

### III.

After careful consideration of the relevant factors, and in light of the specific facts of this case, the Court concludes that Defendant has satisfied its burden of demonstrating that a transfer is necessary to serve the interests of justice and for the convenience of witnesses and parties. The Court upsets Plaintiff's choice of forum only to avoid the substantial inconvenience that Defendant would suffer by litigating this matter in Galveston rather than North Carolina. Plaintiff is not a resident of the Galveston Division, and almost all of the key witnesses in this case reside in North Carolina. Viewed cumulatively, then, the multiple venue factors as enunciated in *Dupre* overwhelmingly indicate that this case would be more appropriately adjudicated in North Carolina. For all of the reasons stated above, Defendant's Motion to Transfer Venue is hereby **GRANTED**, and the case is hereby **TRANSFERRED** to the United States District Court for the Western District of North Carolina, Statesville Division.

**IT IS SO ORDERED.**